Sarah Ferguson (NSBN 14515)
Parsons Behle & Latimer
50 W. Liberty Street, Suite 750
Reno, Nevada 89501
Telephone: (775) 323-1601
SFerguson@parsonsbehle.com

Christina Jepson (*Pro Hac Vice Application Forthcoming*)
Hannah J. Ector (*Pro Hac Vice Application Forthcoming*)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone ( 801) 532-1234
CJepson@parsonsbehle.com
HEctor@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendant*
*Robinson Nevada Mining Company*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DAKOTA HANSEN, individually and on behalf of other similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>ROBINSON NEVADA MINING COMPANY,<br><br>     Defendant. | Case No. 2:25-cv-01237-RFB-NJK<br><br><br>**DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT** |

Defendant Robinson Nevada Mining Company ("Robinson") by and through undersigned counsel of record, Sarah Ferguson, Christina Jepson and Hannah Ector of Parsons Behle & Latimer, respectfully moves this Court to dismiss Plaintiff Dakota Hansen's Complaint (ECF No. 1) in its entirety with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is based on the papers and pleadings filed in this Case, the Memorandum of Points and Authorities submitted herewith, and any argument that this Court may allow.

/ / /

/ / /

PARSONS
BEHLE &
LATIMER

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This matter involves a wage and hour class action against Robinson. Robinson operates the Robinson Mine which is an open-pit mine "located in White Pine County, Nevada, … [and] includes three large pits[,] … [from which,] copper, gold and silver and recently molybdenum have been extracted." (ECF No. 1 ("Compl.") ¶ 36) (citing https://kghm.com/en/our-business/mining-and-enrichment/robinson).

Robinson Mine spans 8,448 acres and employs upwards of 500 hourly employees at any given time. Those hourly employees are employed in a wide range of positions, including equipment operators, mill and shop employees, process employees, maintenance, lab employees, electricians, welders, and administrative (office) employees. Each of these positions requires different personal protective equipment ("PPE"), much of which is only required when employees are completing certain tasks. Some positions, like administrative positions, do not regularly require PPE, and yet the Complaint seeks to include all hourly workers in a class.

Robinson employed the named plaintiff, Dakota Hansen ("Hansen"), from July 2020 through March of 2024, when he was terminated after threatening to drive a dozer through the administrative building at the mine and alluding to stabbing and/or killing his direct supervisors. The White Pine Justice Court granted Robinson a protective order against Hansen in September of 2024. (Case No. 24-PO-00016-7K). Prior to his termination, Hansen worked as an equipment operator at the mine. Like the majority of hourly employees, he worked 4 or 5 days a week for 12 hours a day. All hourly employees, including Hansen, were paid overtime at a rate of 1.5 times their regular rate of pay, including all remuneration, for all hours worked over 40 in a week.

Through Texas counsel, who has now filed at least six similar class actions in Nevada's federal courts, Hansen filed his Original Class and Collective Action Complaint (the "Complaint") against Robinson on July 9, 2025. (ECF No. 1). Hansen seeks relief on behalf of himself and two putative classes of hourly employees: the FLSA collective, which is comprised of "all hourly Robinson employees during the past three years" and the Nevada Class, which is comprised of "all hourly Robinson employees during the past four years in Nevada." (Compl. ¶¶ 24, 26).

PARSONS
BEHLE &
LATIMER

Mr. Hansen on behalf of himself and the putative classes of hourly employees brings causes of action for failure to pay overtime wages under the FLSA (Count I); failure to pay for all hours worked (Count II), failure to pay minimum wages (Count III), and failure to pay overtime wages (Count IV). Counts I, III, and IV are all pled under Nevada state law, while Count I is pled under the federal Fair Labor Standards Act ("FLSA").

Hansen's overtime claims (Count I and Count IV) suffer from a number of flaws: (1) any time spent donning and doffing PPE, even if performed off the clock (which is disputed), was *de minimis* and/or constituted a non-compensable preliminary task such that Hansen and the class are not entitled to compensation for that time as a matter of law; (2) Hansen fails to allege any facts to demonstrate he earned a non-discretionary bonus that was not included in his overtime compensation rate, including facts about when he received such a bonus, the amount, or the type, requiring dismissal of those claims for failure to state a claim, and (3) Hansen fails to adequately allege Robinson acted willfully to deprive him of wages, requiring dismissal of those claims for failure to state a claim. These pleading deficiencies require dismissal of Counts I and IV of the Complaint, or, alternatively, require application of the FLSA's two-year (rather than three-year) statute of limitations to the FLSA claims.

Hansen's state law claims fare no better. In his Complaint, Hansen admits that he was paid significantly more than Nevada's $10.25-$12 minimum wage, earning $33 to $36 per hour for each week he worked at the mine. Further, Plaintiffs cannot demonstrate entitlement to unpaid wages under a failure to pay minimum wage theory or with respect to the donning and doffing claims or bonus claims, because the donning and doffing time was *de minimis* and Nevada law does not require employers to include bonuses in the regular rate of pay for overtime calculation purposes. Counts II and III of the Complaint should therefore be dismissed with prejudice.

## II.    RELEVANT FACTUAL BACKGROUND

Robinson operates a mine in Ely, Nevada. Complaint (Compl. ¶ 36). Hansen was employed as an equipment operator at Robinson from approximately July 2020 to March 2024. (*Id.* ¶ 40). Hansen was an hourly employee and was paid approximately $33 per hour and worked 4 to 5 days per week and 12 hours a day. (*Id.* ¶¶ 44–45).

PARSONS
BEHLE &
LATIMER

3

Hansen dressed out daily in a hard hat, reflective clothing (vest), ear protection, steel-toed boots, safety glasses, and gloves for his job as equipment operator. (*Id.* ¶ 51). Hansen claims he donned and doffed this gear "off the clock", *i.e.*, prior to and/or following his 12-hour shifts. (*Id.* ¶¶ 51, 57). Hansen also claims he attended pre-shift safety meetings off the clock. (*Id.*) However, Hansen's counsel has acknowledged that Robinson did not conduct "pre-shift safety meetings" and that Hansen and the other putative class members were not required to attend safety meetings off the clock. Robinson expects that Hansen will amend his Complaint to remove any such allegations.

Hansen also alleges that Robinson paid him and other hourly employees "non-discretionary bonuses, such as safety bonuses, productivity bonuses, referral bonuses, and gainshare bonuses, calculated at least in part based on the number of hours worked by each Hourly Employee" and that "Robinson fails to include these nondiscretionary bonuses in Hansen's and the other Hourly Employees' regular rates of pay for overtime purposes." (*Id.* ¶¶ 81–82). Because Hansen does not actually claim he received such a bonus, including when or the amount thereof, Robinson moves alternatively for a more definite statement. As has been explained to Hansen's counsel, Robinson does not pay a safety or production bonus, and Hansen never received a referral bonus.

Hansen on behalf of himself and two putative classes of hourly employees brings causes of action for failure to pay overtime wages under the FLSA (Count I); failure to pay for all hours worked (Count II), failure to pay minimum wages (Count III), and failure to pay overtime wages (Count IV). Mr. Hansen seeks to represent two putative classes: the FLSA collective, which is comprised of "all hourly Robinson employees during the past three years" and the Nevada Class, which is comprised of "all hourly Robinson employees during the past four years in Nevada." (Compl. ¶¶ 24, 26).

## III.    LEGAL STANDARD

"Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted." *Clark v. Bank of Am., N.A.*, No. 216CV02228GMNVCF, 2017 WL 3814665, at *1 (D. Nev. Aug. 30, 2017) (citing Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal

PARSONS
BEHLE &
LATIMER

4

conclusions couched as factual allegations are insufficient." *Id.* (citing *Twombly*, 550 U.S. at 555). "Accordingly, Rule 12(b)(6) requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This standard asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

## IV.   ARGUMENT

### A.   Hansen Fails to State a Claim for Unpaid Overtime Under the FLSA.

In Count I of the Complaint, Hansen alleges that Robinson failed to pay him and the putative class members "overtime wages at rates of at least 1.5 times their regular rates of pay— based on all remuneration—for all hours worked in excess of 40 a workweek." (Compl., ¶ 129). Although unclear, it appears that Hansen's FLSA claim incorporates his allegations with respect to (1) "off the clock" work (*i.e.*, time spent donning and doffing equipment and attending safety meetings); and (2) allegations that non-discretionary bonuses were not included in the regular rate of pay. (*See Compl.*, ¶ 79) ("Thus, under Robinson's pre/post shift off the clock policy, Hansen and the other Hourly Employees are denied wages, including overtime wages, for compensable work they perform "off the clock" before and after their scheduled shifts, in violation of the FLSA and Nevada law.")

As to the claims with respect to safety meetings, Hansen's counsel has acknowledged that those meetings occurred on the clock. Robinson expects that those claims will be withdrawn. As discussed below, Hansen's claims with respect to donning and doffing and bonuses are inadequately pled and fail as a matter of law.

####       1.   *The time spent donning and doffing non-unique protective gear is de minimis and not compensable under the FLSA.*

As to the Hansen's claim that he and the class are entitled to payment for the time spent donning and doffing basic non-unique protective equipment, those claims fail. In the Complaint,

PARSONS
BEHLE &
LATIMER

5

Hansen alleges that Robinson required him to don and doff a "hard hat, reflective clothing [vest], ear protection [ear plugs], steel toed boots, safety glasses, [and] gloves" "off the clock." (Compl., ¶ 51). Hansen claims that he "could not safely perform his job duties in accordance with Robinson's policies, procedures, and expectations without this protective clothing, safety gear, equipment" and that "[t]he donning of protective clothing and safety gear . . . [was] integral and indispensable work duties for Hansen because these duties were fundamentally intertwined with his other mining job duties." (*Id.* ¶¶ 54, 56).

The Ninth Circuit requires a "three-stage inquiry" to determine if certain activities are compensable under the FLSA: first whether the activity constitutes "work"; second whether the activity was an "integral and indispensable" duty; and third whether the activity was *de minimis*. *Bamonte v. City of Mesa*, 598 F.3d 1217, 1224 (9th Cir. 2010). The Ninth Circuit recognizes that the donning and doffing of "non-unique protective gear such as hardhats and safety goggles" is not compensable under the FLSA because the time spent completing those activities is *de minimis* as a matter of law. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 904 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005). Hansen's claims with respect to hardhats and safety goggles should therefore be dismissed with prejudice.

Further, like hardhats and safety goggles, this Court can take judicial notice that steel-toed boots, reflective vests, and gloves are required in virtually all construction, mining, and similar industries when hazards like falling objects or foot piercing exist or where heavy equipment or other similar vehicles are in use. Fed. R. Civ. P. 201(b) ("the court may judicially notice a fact that is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also* 30 C.F.R. § 56 (Safety and Health Standards – Surface Metal and Nonmetal Mines) (cited in Complaint at ¶ 55) at § 56.15003 ("All persons shall wear suitable protective footwear when in or around an area of a mine or plant where a hazard exists which could cause an injury to the feet."); *Id.* at § 56.015006 ("Special protective equipment and special protective clothing shall be provided, maintained in a sanitary and reliable condition and used whenever hazards of process or environment, chemical hazards, radiological hazards, or mechanical irritants are encountered in a manner capable of causing injury

PARSONS
BEHLE &
LATIMER

6

or impairment.") These items are thus not unique to a specific job or position, as evidenced by Hansen's allegations that despite the putative class members having differing job titles and job duties (Compl., ¶ 39), each employee is required to wear the same PPE. (*Id.* ¶¶ 51, 69).

Further, no case in the Ninth Circuit or elsewhere has held that the time spent donning and doffing steel-toed boots and/or safety vests is compensable time. In fact, the majority of cases view the time spent donning and doffing of steel-toed boots and vests as akin to the time spent donning other non-unique gear such as hard hats. *See, e.g.*, *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007) (affirming dismissal of plaintiffs' complaints and denial of leave to amend because the time spent donning and doffing "such generic protective gear" such as a helmet, safety glasses, and steel-toed boots was not compensable as a matter of law); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126, n.1 (10th Cir.1994) (holding that donning and doffing safety glasses, a pair of earplugs, a hard hat and safety shoes, "although essential to the job, and required by the employer," are pre- and postliminary activities and thus non-compensable and further explaining "[i]t could also be said that the time spent putting on and taking off these items is *de minimis* as a matter of law, although it is more properly considered not work at all. Requiring employees to show up at their workstations with such standard equipment is no different from having a baseball player show up in uniform, a businessperson with a suit and tie, or a judge with a robe. It is simply a prerequisite for the job, and is purely preliminary in nature."); *Stuntz v. Lion Elastomers, L.L.C.*, 826 F. App'x 391, 400 (5th Cir. 2020) (holding that time spent donning and doffing steel-toed boots, fire-retardant clothing, gloves, hard hats, and safety glasses not compensable as de minimis and/or a non-compensable preliminary task); *Levias v. Pac. Mar. Ass'n*, 760 F. Supp. 2d 1036, 1057 (W.D. Wash. 2011) (holding that time spent donning and doffing non-unique gear such as safety vests, hard hats, and hard-toed boots was not compensable because it was not integral or indispensable work and because it was *de minimis*); *White v. Tip Top Poultry, Inc.*, No. 4:07-CV-101-HLM, 2008 WL 11470959, at *16 (N.D. Ga. Sept. 16, 2008), *report and recommendation adopted*, No. 4:07-CV-0101-HLM, 2008 WL 11470958 (N.D. Ga. Oct. 7, 2008) (holding that time spent donning and doffing a smock, hairnet, and earplugs was not compensable as *de minimis*).

Like each case described above, the time it takes Hansen and others to don and doff items

like boots, reflective vests, ear protection, and gloves is negligible and constitutes a non-compensable preliminary task. Hansen's FLSA claims, to the extent they rely on allegations about donning and doffing "off the clock" should therefore be dismissed with prejudice.

### 2. Hansen fails to allege he received a non-discretionary bonus which was not included in the regular rate of pay.

Hansen has not alleged that he received any non-discretionary bonus which was not included in the regular rate of pay for purposes of calculating overtime. Under the FLSA, employers must pay overtime of not less than time and one-half the regular rate of pay for all hours worked over 40 hours in a workweek. In calculating an employee's "regular rate of pay," the FLSA excludes "discretionary" bonuses but requires employers to include "non-discretionary" bonuses. A "nondiscretionary bonus" is generally a bonus that is promised in advance, subject to a specific calculation." 29 C.F.R. § 778.211(b). "The label assigned to a bonus does not conclusively determine whether a bonus is discretionary under [29 U.S.C. §207(7(e)(3))]." *Id.* at § 778.211(d).

In the Complaint, Hansen alleges that "Robinson agreed to pay, and indeed, subsequently paid Hansen and the other Hourly Employees non-discretionary bonuses, such as safety bonuses, productivity bonuses, referral bonuses, and gainshare bonuses, calculated at least in part based on the number of hours worked by each Hourly Employee" and "Robinson fails to include these nondiscretionary bonuses in Hansen's and the other Hourly Employees' regular rates of pay for overtime purposes." (Compl. ¶¶ 81–82). However, Hansen never alleges when he received such a bonus, the amount of that bonus, what made the bonus non-discretionary, or any other facts to allow Robinson to investigate or respond to the claims. Hansen never received any other production bonus, safety bonus, or referral bonus. Presumably, this is why Hansen did not specifically plead that he received any such bonus. In any event, the current Complaint does not sufficiently allege such a claim. Vague allegations are not sufficient to put Robinson on notice of the specific allegations against it. Accordingly, to the extent Hansen's overtime claims are predicated on a failure to include purported non-discretionary bonuses in his overtime compensation, Hansen "does not sufficiently plead a date where he earned a non-discretionary bonus." *Flores v. Marriott Resorts Hosp. Corp.,* No. CV188012JVSJPRX, 2019 WL 6792799, at *3 (C.D. Cal. Sept. 23, 2019).

PARSONS
BEHLE &
LATIMER

Plaintiffs' FLSA claims should therefore be dismissed. *Id.*

**B.      The Two-Year Statute of Limitations Applies, Barring Any Claims That Accrued Prior to July 2023.**

Even if Hansen's FLSA claims survive dismissal, Hansen does not and cannot adequately allege that Robinson's actions were willful. Therefore, the two-year statute of limitations applies, barring any portion of the claims that accrued prior to July 2023.

The statute of limitations for FLSA claims and claims under NRS §§ 608.016, 608.018, and 608.020-050 is two years. *See* 29 U.S.C. § 255(a); *Allen v. Vocatus, LLC*, 645 F. Supp. 3d 1037, 1047–48 (D. Nev. 2022) (confirming the two-year statute of limitations for unpaid overtime claims applies to NRS 608.016 and 608.018); *D'Amore v. Caesars Enter. Services, LLC*, No. 2:18-cv-1990 JCM (VCF), 2019 WL 8128166, *6 (D. Nev. Dec. 16, 2019) (applying the two-year statute of limitations to claims for violation of NRS 608.016, 608.018, 608.030, and 608.140).

**1.      *Hansen Did Not Adequately Allege Willfulness, and the Two-Year Statute of Limitations Thus Applies to His FLSA Claims.***

The FLSA statute of limitations is **only** extended to three years if alleged FLSA violations arise out of "willful" conduct on the part of defendants. 25 U.S.C. § 255(a). A violation of the FLSA is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *D'Amore v. Caesars Enter. Servs., LLC*, No. 218CV1990JCMVCF, 2019 WL 8128166, at *4 (D. Nev. Dec. 16, 2019). Further, "claims of malice, intent, knowledge, and other conditions of a person's mind must 'allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.'" *Russo v. Duracell, Inc.*, No. 2:21-CV-1403-GMN-DJA, 2022 WL 960591, at *4 (D. Nev. Mar. 29, 2022) (quoting *ESCO Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051, 1058 (D. Nev. 2016)).

Hansen provides no allegations to support that Robinson knew or should have known that its alleged "off the clock" and bonus policies violated the FLSA. Hansen essentially alleges that the policies violated the FLSA and that Robinson necessarily must have known this. These allegations fall short of Hansen's duty to allege "sufficient underlying facts from which a court may

PARSONS
BEHLE &
LATIMER

reasonably infer that a party acted with the requisite state of mind." *D'Amore*, 2019 WL 8128166, at *4.

At most, Hansen alleges the barebones elements of willfulness (*i.e.*, that Robinson knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA). But Hansen's failure to support these bare allegations with any facts necessitates the application of the two-year statute of limitations. *D'Amore*, 2019 WL 8128166, at *4 (quoting *Twombly*, 550 U.S. at 555, 557); *Bobiles v. Las Vegas Rev. J., Inc.*, No. 219CV00287JADEJY, 2020 WL 1044007, at *2 (D. Nev. Mar. 4, 2020) (dismissing an FLSA misclassification cause of action on the ground that the two-year rather than the three-year statute of limitations applied because plaintiff's allegations of willfulness, namely that "defendants were sophisticated business owners and had lawyers that drafted their Agreements to intentionally, illegally, improperly, and willfully misclassify her to save a substantial amount of money paying her such a meager wage in violation of the FLSA" were "entirely conclusory and unsupported by factual allegations from which [the court] could deduce willful conduct by the [defendant].”); *Navaja v. Honolulu Acad. of Arts*, No. CV 15-00344 LEK-RLP, 2016 WL 843250, at *5 (D. Haw. Feb. 29, 2016) (holding that the two-year statute of limitations applied because "Plaintiff's Complaint does not include any allegations that would support a finding that his FLSA claims arose out of a willful violation."); *Thompson v. N. Am. Terrazzo, Inc.*, No. C13-1007RAJ, 2014 WL 2048188, at *6 (W.D. Wash. May 19, 2014) (granting motion to dismiss plaintiff's FLSA claims as time-barred and that the two-year statute of limitations applied in case where plaintiff alleged that defendant "intentionally and purposefully denied overtime pay" and "intentionally, purposefully, subjectively, and arbitrarily reduced the plaintiff's hourly salary and their job description" because the allegations 'do not allege the factual basis for [defendant's] knowledge or reckless disregard that its conduct was prohibited by the FLSA.").

Like *Bobiles* and the other cited cases, Hansen's allegations that the alleged policies violated the FLSA and that Robinson must have known this are entirely conclusory. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Hansen points to nothing in his Complaint to provide a factual basis for the allegation that Robinson intentionally or willfully deprived him and/or the putative class members of any wages. Accordingly, Hansen's claims of willfulness should be dismissed,

and this Court should enter an order confirming that the FLSA's two-year statute of limitations applies to Hansen's FLSA overtime claim (Count I).

### 2. *A Two-Year Statute of Limitations Also Applies to Hansen's State Law Claims.*

Hansen's Nevada state law claims (Counts II, III, and IV) are also subject to a two-year statute of limitations. In the Complaint, Hansen purports to represent a putative class of Nevada Hourly Employees, which includes "All hourly Robinson employees during the past 4 years in Nevada." (Compl., ¶ 26). Hansen's Nevada state law claims should be dismissed to the extent they seek to recover for alleged violations dating back four years, rather than the standard two-year statute of limitations under Nevada law.

Nevada law expressly provides that causes of action brough under NRS 608.260 (minimum wage) are subject to a two-year statute of limitations. *See* NRS 608.260(1) ("If any employer pays any employee a lesser amount than the minimum wage set forth in NRS 608.250 or, if applicable, the minimum wage established by regulation of the Director of the Department of Health and Human Services pursuant to NRS 608.670, the employee may, at any time within 2 years, bring a civil action against the employer). The Supreme Court of Nevada recently affirmed the application of the two-year statute of limitations to claims under additional Nevada wage and hour laws, including NRS 608.016 (payment for each hour worked) and 608.018 (payment for overtime). *Martel v. HG Staffing*, LLC, 138 Nev. 602, 605, 519 P.3d 25, 30 (2022)[1].

---

[1]  The United States District Court for the District of Nevada recently held that "For wage claims brought before May 27, 2021, the statute of limitations is two years. For claims brought after May 27, 2021, the statute of limitations is four years under NRS 11.220, which provides that the statute of limitations for claims that do not have an express statute of limitations to [sic] four years." *Fernandez-Morales v. Currier*, No. 3:23-CV-00115-ART-CSD, 2024 WL 4346550, at *2 (D. Nev. Sept. 29, 2024), *appeal dismissed sub nom. Morales v. Currier*, No. 24-6044, 2025 WL 985933 (9th Cir. Feb. 6, 2025). The Court relied on *Martel* and NRS 11.220 in making this holding. To be clear, *Martel* **did not** hold that a four-year statute of limitations applies to claims after May 27, 2021.  Indeed, the *Martel* Court explained "The Martel employees commenced this lawsuit in 2016, so we need not decide which limitations period applies to claims under NRS Chapter 608 that were commenced after the 2021 amendatory provisions of NRS 11.220 became effective." *Martel*, 519 P.3d at 30, n. 3. NRS § 11.220, which provides that "[a]n action for relief, not hereinbefore provided for, must be commenced within 4 years after the cause of action shall have accrued, regardless of whether the underlying cause of action is analogous to that of any other cause of action with a

Further, even assuming a "willfulness" or similar exception to the two-year statute of limitations applied to the state law claims (it does not), as explained above, Hansen has not alleged any facts to support a claim that Robinson acted willfully, knowingly, or intentionally in enacting the alleged relevant policies. This Court should therefore enter an order confirming that a two-year statute of limitations applies to Hansen's Nevada state law claims (Counts II, III, and IV).

**C.   Robinson Paid Hansen for All Hours Worked.**

Counts II and III of the Complaint seek to recover for "unpaid wages," both in the form of unpaid minimum wages and unpaid time for time spent donning and doffing PPE. These claims fail.

*1.   Hansen admits Robinson paid him at least minimum wage.*

Hansen admits that he was paid minimum wage and, thus, his claim on this basis should be dismissed. In Count III of his Complaint, Hansen alleges a claim of failure to pay minimum wages pursuant to Nevada law. Hansen provides very little support for this claim. He alleges that he and the class members "are entitled to recover their regular hourly rate of pay or the minimum wage, whichever is higher, for all unpaid hours worked . . ." (Compl, ¶ 17). Hansen includes no allegations to explain that he did not receive minimum wage.

Pursuant to NRS § 608.250, "Each employer shall pay to each employee of the employer a wage of not less than:

> (e) Beginning July 1, 2023:
> (1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $10.25 per hour worked.
> (2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $11.25 per hour worked.
> (f) Beginning July 1, 2024:

statute of limitations expressly prescribed by law" does not indicate or suggest that it is meant to supersede prior case law expressly creating statutes of limitation, even if the statute of limitations was created under the analogous limitations theory. Given that *Martel* is the only case on point providing the relevant statutes of limitation under Nevada law, and given that the effect of NRS § 11.220 on cases like *Martel* remains an open question in Nevada, this Court should follow *Martel* and hold that a two-year statute of limitations applies to Hansen's Nevada state law claims.

PARSONS
BEHLE &
LATIMER

12

(1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $11.00 per hour worked.
(2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $12.00 per hour worked.

In other words, during the relevant time period, Robinson was required to pay Hansen and the putative class members between $10.25 and $12 per hour. This Court has previously found that "If the total wage paid to an employee in any given workweek, divided by the total hours worked that week, equals or exceeds the applicable minimum wage, there is no FLSA violation." *D'Amore v. Caesars Enter. Servs., LLC,* No. 218CV1990JCMVCF, 2019 WL 8128166, at *3 (D. Nev. Dec. 16, 2019).[2] The same logic applies to this claim brought under state law. Based on Hansen's own admissions in the Complaint, he was paid far more than minimum wage.

Hansen alleges in the complaint that he worked four to five days a week for twelve hours a day at an hourly rate of $33. (Compl. ¶¶ 44–45). Hansen also claims, "the other Hourly Employees generally work approximately 4 to 5 days a week for approximately 12 hours a day "on the clock" (48-60 hours a workweek)." (*Id.* ¶ 47). Hansen does not provide any information about the Hourly Employees' rate of pay, making it impossible to determine whether those employees earned minimum wage. (*See generally*, *id.*)

Hansen earned far more than the minimum wage for all hours worked even including "off the clock" time of up to 45 minutes per day. (*See* Compl. ¶¶ 52, 58) (alleging that donning gear in the morning took 20 to 30 minutes and doffing at the end of the day took 10 to 15 minutes).[3] At the low end of his alleged hours worked (48 per week, four days per week at 12 hours each), Hansen earned at least $1,716.00 per week (($33 regular rate of pay x 40 regular hours) + (($33x1.5

---

[2]     "The Nevada Supreme Court has previously looked to the FLSA when deciding state law wage claims." *Sargent v. HG Staffing*, LLC, No. 313CV00453LRHGWF, 2019 WL 1117905, at *4 (D. Nev. Mar. 8, 2019).

[3]     Hansen's 20-to-30-minute estimate includes time spent attending a daily safety meeting. As discussed herein, Hansen's counsel has acknowledged that safety meetings do not occur off the clock. The alleged "off the clock time" time is therefore less than 20 to 30 minutes when subtracting time spent attending safety meetings.

overtime rate) x 8 hours overtime))[4], equating to an hourly wage of $35.78 ($1716/48). Even accounting for three allegedly unpaid hours (45 minutes per day for alleged "off the clock" time), Hansen still earned approximately $33.65 per hour ($1716/51 hours).[5]

And at the high end of the alleged hours worked (60 per week), Hansen again earned far more than the minimum wage under Nevada law. Indeed, in weeks he worked five days a week and 60 hours, Hansen earned $2,310.00 per week, according to the Complaint ($33 regular rate of pay x 40 regular hours) + ((33x1.5 overtime rate) x 20 overtime hours), which equates to an hourly wage of $38.50 ($2310/60 hours). Even accounting for 3.75 alleged unpaid hours, Hansen still earned approximately $36.24 per hour ($2310/63.75 hours), much more than the minimum wage in Nevada. NRS 608.250(1)(e)–(f). Thus, Hansen *admits* he was paid more than minimum wage for all periods and hours worked. Hansen makes no attempt in his Complaint to explain how he was not paid minimum wage. His minimum wage claims fail. Given that he was paid more than minimum wage for all hours worked, he cannot bring minimum wage claims on behalf of the purported class. *See* Fed. R. Civ. P. 23(a)(1)(3) (requiring that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"); Nev. R. Civ. P. 23(a)(1)(3) (same). Count III should therefore be dismissed with prejudice.

> **2.    *Hansen fails to allege sufficient facts to support his claim for unpaid wages.***

At Count II of the Complaint, Hansen alleges a cause of action for failure to pay for all hours worked under NRS § 608.016, including time spent donning and doffing of PPE and failure to pay minimum wages. (Compl. ¶ 143).

---

[4]    This calculation does not include any additional remuneration that was included in Hansen's overtime rate, including remuneration for gainshare bonuses. Inclusion of those funds would only increase Hansen's hourly rate of pay.

[5]    The Nevada Supreme Court has endorsed calculating minimum wage as an average over a workweek. *A Cab, LLC v. Murray*, 137 Nev. 805, 807, 501 P.3d 961, 967 (2021) ("minimum wage damages are simple to calculate: multiply the hours worked in a pay period by the applicable minimum hourly wage to calculate the minimum amount due, then subtract the actual pay received to determine whether a deficiency exists.").

To the extent Hansen's unpaid wages claims are a repackaging of his minimum wage claims, the claims fail. Nevada's minimum wage statute, NRS § 608.250, requires an employer pay each employee a wage of not less than the statutorily required minimum wage ($10.25 to $12 in 2023 and 2024) per hour worked. NRS § 608.016 allows employees to assert an unpaid wages claim when they do not receive wages for each hour worked. Hansen seems to believe that if an employee is not paid for all hours worked, he can bring an unpaid hours claim in addition to a minimum wage claim, because he received $0 for the unpaid hours (*i.e.*, less than minimum wage). This strained reading of the minimum wage statute would effectively give Hanen two causes of action for the exact same conduct, each potentially with a different statute of limitations.[6] Hansen's claims with respect to minimum wage violations are encompassed under Nevada's minimum wage statute and cannot serve as grounds for relief for unpaid wages under 608.016. Further, as explained above, Robinson paid Hansen significantly more than minimum wage. Hansen is thus not entitled to unpaid wages on this ground.

Further, Hansen cannot recover for his donning and doffing claims under Nevada state law because the time he allegedly spent donning and doffing the listed safety gear was *de minimis* and thus not compensable. The Nevada Supreme Court recently held that "the Nevada Legislature did not intend to incorporate the [Portal-to-Portal Act's ("PPA")] exceptions to compensable work activities into its wage-hour laws." *Amazon.com Servs., LLC v. Malloy*, 141 Nev. Adv. Op. 50, 2025 WL 3032215, at *1 (2025). "[T]he PPA aims at excluding compensation for travel as well as preliminary and postliminary activity that is not principal activity." *Id.*, at *3; *see also* 29 U.S.C. § 254(a). The *Malloy* Court answered this question in the context of whether pre-shift COVID-19 testing was compensable work time. *Id.*, at *1 ("since only a portion of the PPA is actually at issue (the exceptions to "work"), it would be improper for us to address the entirety of the PPA's inclusion into Nevada law.")

Case law creating the integral and indispensable test described *supra.* at §A(1) was developed in response to the PPA exception for preliminary and postliminary activity. However,

---

6    Hansen argues that claims under NRS 608.016 are subject to a four-year statute of limitations.

the *de minimis* doctrine existed prior to the adoption of the PPA in 1947 and is separate from the PPA's work-compensability exceptions discussed in *Malloy*. *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) (recognizing the *de minimis* doctrine and explaining that "[t]he workweek contemplated by [the overtime provision of the FLSA] must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved."); *see also Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (differentiating between whether an activity was preliminary or *de minimis* and holding that the *de minimis* rule, as described in *Anderson*, applies to claims of overtime compensation under the FLSA). In other words, the *de minimis* doctrine is not one of the PPA work-compensability exceptions addressed in *Malloy*. Because Courts in this district consistently apply the *de minimis* test to FLSA and Nevada wage-hour claims, the Court should do so here. *See, e.g.*, *Xing v. USA Good Travel & Tour Inc.*, No. 2:20-CV-01593-MMD-BNW, 2024 WL 4564294, at *2 (D. Nev. Oct. 23, 2024); *Sargent v. HG Staffing, LLC*, No. 313CV00453LRHGWF, 2019 WL 1117905, at *9 (D. Nev. Mar. 8, 2019). And for the reasons explained *supra*. at §A(1), the time Hansen allegedly spent donning and doffing his non-unique safety gear was *de minimis*. Accordingly, even if he donned and doffed the equipment off the clock (which is disputed), Hansen is not entitled to recover payment for that non-compensable time under Nevada law. Count II should therefore be dismissed with prejudice.

### D.    Hansen's State Law Overtime Claims Fail for the Same Reasons the FLSA Claims Fail.

Count IV of the Complaint seeks to recover for alleged violations of Nevada's overtime statute, NRS § 608.018. Like the FLSA, Nevada requires employers to pay employees 1.5 times their regular wage rate for all hours worked over 40 in any given week. NRS § 608.018(2). Courts interpreting Nevada law rely heavily on cases interpreting the FLSA's requirements when determining whether there has been a violation of the statute. *See, e.g.*, *Xing v. USA Good Travel*

PARSONS
BEHLE &
LATIMER

*& Tour Inc.*, No. 2:20-CV-01593-MMD-BNW, 2024 WL 4564294, at *2 (D. Nev. Oct. 23, 2024) (analyzing the FLSA and NRS 608.018 under the same standard); *Sargent v. HG Staffing, LLC*, No. 313CV00453LRHGWF, 2019 WL 1117905, at *9 (D. Nev. Mar. 8, 2019) "[NRS 608.018] recently revised, is intended to track federal law." (citing *Csomos v. Venetian Casino Resort, LLC*, No. 55913,381 P.3d 605, 2012 WL 642460, at *3 (Nev. Feb. 24, 2012)); *Kariuki v. Shac, LLC*, Case No. 2:14-cv-1118 JCM (CWH), 2016 WL6069927, at *5 (D. Nev. Oct. 10, 2016) ("Nevada law "follows the same requirements as the FLSA for overtime compensation claims.")

As explained *supra*. at §A, Hansen's overtime claims fail because (1) the time spent donning and doffing PPE was *de minimis*; and (2) Hansen fails to allege when or if he received a non-discretionary bonus that was not included in his regular rate of pay. For the same reasons discussed above, Hansen's Count IV should be dismissed.

Count IV fares no better under a plain reading of Nevada law. NRS § 608.018 requires payment of 1.5 times "an employee's regular wage rate" for hours worked over 40 in any scheduled week of work. NRS § 608.012 defines "wages" as: "The amount which an employer agrees to pay an employee for the time the employee has worked, computed in proportion to time… but excludes any bonus or arrangement to share profits." Unlike the FLSA, Nevada law excludes bonuses or profit-sharing arrangements from an employee's wages. Accordingly, to the extent Hansen's Nevada overtime claims rely on an alleged failure to include bonuses in Hansen's overtime rates, those claims should be dismissed with prejudice, as Nevada law does not require bonuses to be included in overtime wages.

Hansen's overtime claims with respect to donning and doffing also fail under Nevada law, because the alleged time spent donning and doffing was *de minimis*, as described above. Count IV should therefore be dismissed with prejudice.

**E.   Alternatively, Robinson Requests that this Court Order Hansen to Provide a More Definite Statement with Respect to his Bonus Claims.**

Federal Rule of Civil Procedure 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "An order granting the

motion is appropriate when the responding party cannot ascertain the substance of the asserted claim." *C.W. v. Nevada Dep't of Educ.*, No. 2:24-CV-01800-GMN-DJA, 2025 WL 2676422, at *6 (D. Nev. Sept. 18, 2025); *see also Reyes v. Colorado Cas. Ins. Co.*, No. 2:12-CV-00029-ECR, 2012 WL 1376973, at *1 (D. Nev. Apr. 19, 2012) (citing *Comm. for Immigrant Rts. of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F. Supp. 2d 1177, 1191 (N.D. Cal. 2009) "A court properly grants a motion for a more definite statement where the complaint is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself."

As explained above, Hansen alleges that "Robinson agreed to pay, and indeed, subsequently paid Hansen and the other Hourly Employees non-discretionary bonuses, such as safety bonuses, productivity bonuses, referral bonuses, and gainshare bonuses, calculated at least in part based on the number of hours worked by each Hourly Employee" and "Robinson fails to include these nondiscretionary bonuses in Hansen's and the other Hourly Employees' regular rates of pay for overtime purposes." (Compl. ¶¶ 81–82).

Hansen never alleges when he received a non-discretionary bonus, the amount of that bonus, the type of bonus, or any other facts to allow Robinson to investigate the viability of his claims or respond to the claims. These facts are necessary for Robinson to determine the type(s) of bonuses that may be at issue in this case, if any, and respond to the Complaint. As Robinson has explained to Hansen's counsel, even assuming the bonuses listed in the Complaint are non-discretionary, Robinson does not and has never paid a safety bonus or production bonus (other than gainshare), and Hansen never received a referral bonus, and gainshare bonuses are included in all hourly employees' (including Hansen's) regular rates of pay. If Hansen does not allege he received a qualifying non-discretionary bonus, he cannot state a plausible claim for relief on this issue and likewise cannot represent a class of employees on this issue. Fed. R. Civ. P. 23(a)(1)(3) (requiring that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"); Nev. R. Civ. P. 23(a)(1)(3) (same).  Forcing Robinson to respond to the Complaint without knowing what type of bonuses Hansen alleges he received would only prejudice Robinson by

///

///

subjecting it to the potential for discovery on an issue that cannot be certified on a class-wide basis.[7] *See Reyes*, 2012 WL 1376973, at *1 (granting a motion for more definite statement where the complaint did not specify which of two similar causes of action under which the plaintiff was seeking relief, such that the defendant was not provided with sufficient notice of the claims it was expected to defend against.); *see also Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 192 (M.D. Pa. 2008) (granting a motion for more definite statement where the proposed collective action group was ill-defined such that the employer was "left to guess as to which employees it failed to pay overtime in violation of the FLSA.")

Robinson is facing an expensive and time-consuming class-action lawsuit on a number of issues. If it is clear at the pleading stage that Hansen did not receive a qualifying bonus, the parties can avoid the expense of discovery into this issue now and circumvent a determination at the class certification stage that the bonus claims were never viable. *See Hair v. Aetna Better Health of Illinois*, No. 16 CV 9549, 2017 WL 11715680, at *4 (N.D. Ill. Oct. 16, 2017) (holding that "A more definite statement will provide clarity as to whether the Court can rule on the sufficiency of Plaintiffs' class allegations before discovery and, if not, it will help define the scope of discovery and what Defendant must defend against.") Robinson therefore moves for a more definite statement and requests the Court order Hansen to identify the specific bonus(es) he claims he received and were not included in his regular rate of pay, if any.

---

[7] Rule 12 is not clear as to whether a motion for more definite statement should be filed before or simultaneously with a motion to dismiss. *See, e.g.*, Fed R. Civ. P. 12(e) ("[a motion for more definite statement] must be made before filing a responsive pleading;" *see also id*. at 12(a)(4): ("Unless the court sets a different time, serving a motion under this rule alters these periods as follows: (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or (B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served."); *see also Sanzaro v. Ardiente Homeowners Ass'n, LLC*, No. 211CV01143RFBCWH, 2014 WL 12784477, at *2 (D. Nev. July 10, 2014) (holding that "[h]aving had its motion for more definite statement denied, Defendant J.F. Shea has until July 24, 2014 to serve its responsive pleading or to make any motion that must be made before serving a responsive pleading."). Robinson reserves the right to amend its Motion to Dismiss based on the Court's ruling on the motion for more definite statement.

PARSONS
BEHLE &
LATIMER

19

## V.    CONCLUSION

Hansen's Complaint suffers from a number of pleading and factual deficiencies. Hansen has failed to state a claim for unpaid overtime under the FLSA and Nevada state law, because the tine he allegedly spent donning and doffing PPE was *de minimis* and thus non-compensable and because he fails to allege he received a non-discretionary bonus that was not included in his regular rate of pay. Further, based on his own allegations, Hansen was paid significantly more than minimum wage, and thus has failed to state a claim for failure to pay minimum wage or for unpaid wages under state law. For the reasons outlined above, the Complaint should be dismissed.

DATED this 18th day of November, 2025.

PARSONS BEHLE & LATIMER

*/s/ Sarah Ferguson*
Sarah Ferguson (NSBN 14515)
50 W. Liberty Street, Suite 750
Reno, NV 89501
Telephone: (775) 323-1601
SFerguson@parsonsbehle.com

Christina Jepson
(*Pro Hac Vice Application Forthcoming*)
Hannah J. Ector
(*Pro Hac Vice Application Forthcoming*)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone ( 801) 532-1234
CJepson@parsonsbehle.com
HEctor@parsonsbehle.com
ecf@parsonsbehle.com

*Attorney for Defendant*

PARSONS
BEHLE &
LATIMER

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that I am an employee of Parsons Behle & Latimer, and that on this 18th day of November, 2025, I filed a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT** with the Clerk of the Court through the CM/ECF system which sent electronic notification to the following:

Esther C. Rodriguez (NSBN 006473)
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145
info@rodriguezlaw.com

Alyssa J. White (TSBN 24073014)
Josephson Dunlap LLP
11 Greenway Plaza, Suite 3050
Houston TX  77046
awhite@mybackwages.com

*Attorneys for Plaintiff*

/s/ *Nancy A. Prout*
Employee of Parsons Behle & Latimer

PARSONS
BEHLE &
LATIMER

21