Sarah Ferguson (NSBN 14515)
Parsons Behle & Latimer
50 W. Liberty Street, Suite 750
Reno, Nevada 89501
Telephone: (775) 323-1601
SFerguson@parsonsbehle.com

Christina Jepson (*Pro Hac Vice Application Forthcoming*)
Hannah J. Ector (*Pro Hac Vice Application Forthcoming*)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone ( 801) 532-1234
CJepson@parsonsbehle.com
HEctor@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendant*
*Robinson Nevada Mining Company*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DAKOTA HANSEN and ROBERT CHRISTENSEN, individually and on behalf of other similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBINSON NEVADA MINING COMPANY,<br><br>    Defendant. | Case No. 2:25-cv-01237-RFB-NJK<br><br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** |

Defendant Robinson Nevada Mining Company ("Robinson") by and through undersigned counsel of record, Sarah Ferguson, Christina Jepson, and Hannah Ector of Parsons Behle & Latimer, respectfully moves this Court to dismiss Plaintiffs Dakota Hansen and Robert Christensen's ("Plaintiffs") Amended Complaint (ECF No. 21) in its entirety with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Motion is based on the papers and pleadings filed in this Case, the Memorandum of Points and Authorities submitted herewith, and any argument that this Court may allow.

/ / /

PARSONS
BEHLE &
LATIMER

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This case is a purported class action for alleged wage violations. Plaintiffs claim that: (1) they are entitled to be paid for donning and doffing basic protective clothing; (2) that they are entitled to have certain bonuses included in their regular rate of pay when calculating overtime; (3) that Robinson acted willfully, extending the statute of limitations to three years; (4) that they were not paid minimum wage; and (5) that Robinson improperly deducted fees for uniform cleaning. But even after two chances, Plaintiffs have not properly pled their claims. Plaintiffs have: (1) failed to allege that they dressed out in the special type of personal protective equipment ("PPE") that requires an employer to pay for donning and doffing time, (2) failed to allege that they received any bonus that was not included in their regular rate of pay; (3) failed to allege that Robinson acted willfully with respect to any of its wage and overtime policies; (4) admitted they are paid more than minimum wage; and (5) raised a claim for uniform deductions that is barred by Nevada law. Their other claims also fail as explained below.

Through Texas counsel, who has now filed at least six similar class actions in Nevada's federal courts, Plaintiff Dakota Hansen ("Hansen") originally filed his Complaint in July of 2025. ECF No. 1 (the "Complaint"). Hansen's original Complaint alleged claims on behalf of himself and two putative classes of hourly employees under the Fair Labor Standards Act (FLSA) and Nevada state law.[1] Hansen alleged a variety of wage violations, including that Robinson failed to pay employees for pre-shift safety meetings.

Plaintiffs' Original Complaint was riddled with deficiencies and Robinson filed a Motion to Dismiss or Alternatively a Motion for More Definite Statement. *See* ECF No. 17. Robinson

---

[1]    Plaintiffs also inexplicably attempt to include all hourly employees in a class even though they do different jobs and wear different protective clothing. Robinson Mine spans 8,448 acres and employs upwards of 500 hourly employees at any given time. Those hourly employees are employed in a wide range of positions. Each of these positions requires different PPE, much of which is only required when employees are completing certain tasks (*i.e.,* during the middle of a shift). Some positions, like administrative positions, do not regularly require PPE, and yet the Amended Complaint seeks to include all hourly workers in a class.

PARSONS
BEHLE &
LATIMER

pointed out that no safety meetings occurred off the clock, that Plaintiff only donned basic PPE that is considered *de minimis* (and thus not compensable), and that many of the bonuses referenced in the complaint either did not exist or that Hansen did not receive them. Plaintiffs filed an Amended Complaint but only fixed one of these deficiencies--removing the claim that safety meetings occurred off the clock (because this in fact never happened). ECF No. 21 (the "Amended Complaint). Plaintiffs did not address any of the additional deficiencies in the original Complaint[2]. Instead, Plaintiffs add additional claims regarding uniforms that are barred by Nevada law. The Amended Complaint should be dismissed.

First, Plaintiffs' claims about donning and doffing fail. Robinson requires certain categories of employees to wear basic PPE—hard hats, reflective vests, ear plugs, safety glasses, work gloves and steel toes boots. This PPE is generic and worn in virtually all industries in which employees work with or near heavy machinery. The law does not require Robinson to pay for time spent donning and doffing this basic PPE.

Second, Plaintiffs' claims about bonuses fail because the bonuses are included in the regular rate (the gainshare bonus), they were not paid to Plaintiffs (referral bonuses), or they do not exist (production and safety bonuses). Plaintiffs do not allege they received referral, production, or safety bonuses, and only Christensen asserts he received a gainshare bonus, although he fails to adequately allege how or why that bonus is non-discretionary. Plaintiffs' bonus claims should therefore be dismissed.

Third, Plaintiffs' claims about willfulness fail. To state a claim that an employer's alleged violations of the FLSA were willful, a plaintiff must allege sufficient facts demonstrating the employer knew or showed reckless disregard of whether its conduct was prohibited by the FLSA. *D'Amore v. Caesars Enter. Servs., LLC*, No. 218CV1990JCMVCF, 2019 WL 8128166, at *4 (D. Nev. Dec. 16, 2019). Conclusory statements like Plaintiffs' that an employer's policies violated the

---

[2]   Notably, despite removing the allegations with respect to attending pre-shift safety meetings "off the clock," Plaintiffs still allege that alleged pre-shift "work" took them 20-30 minutes each workday. *Compare* Compl., ¶ 52 *with* Am. Compl., ¶ 58. Plaintiffs have not reduced this number after removing the safety meetings from their complaint.

FLSA and that they knew or must have known the same are insufficient to state a claim for willfulness in this district. *See id.*

Fourth, Plaintiffs' claims about minimum wage fail. Plaintiffs make the conclusory allegation that they are not paid minimum wage. However, in the Amended Complaint, Plaintiffs admit they were paid significantly more than Nevada's $10.25-$12 minimum wage, earning $33 to $37 per hour for each week they worked at the mine. Thus, the claim fails.

Fifth, Plaintiffs' claims about uniform deductions fail. Robinson provides an optional service to launder employees' uniforms for a flat rate charged each pay period. Employees can choose whether to opt into this service. Employees who are required to wear certain items also utilize this service and are not charged for laundering mandatory clothing items. In any event, Nevada does not provide a private right of action for uniform deduction claims, and, even if it did, Plaintiffs cannot demonstrate that Robinson's "uniform deduction policy" violated the law because Plaintiffs do not allege what "uniforms" they were charged for or whether those uniforms required a special cleaning process.

For all of these reasons and the reasons set forth below, Plaintiffs' Amended Complaint should be dismissed.

## II.    RELEVANT FACTUAL BACKGROUND

Robinson operates an open pit mine in Ely, Nevada. Am. Compl., ¶ 39. Hansen was employed as an equipment operator at Robinson from approximately July 2020 to March 2024. *Id.* ¶ 45. Hansen was an hourly employee and was paid approximately $33 per hour and worked 4 to 5 days per week and 12 hours a day. *Id.* ¶¶ 49, 51.

Robinson terminated Hansen after he threatened to drive a dozer through the administrative building at the mine and alluded to stabbing and/or killing his direct supervisors. The White Pine Justice Court granted Robinson a protective order against Hansen in September of 2024. (Case No. 24-PO-00016-7K).

Christensen was employed as a mechanic and welder at Robinson from April 2018 until his retirement in August 2025. *Id.*, ¶ 43. Christensen was also an hourly employee and worked 4 to 5 days per week at 12 hours per day at an hourly rate of $36.90. *Id.*, ¶¶ 50-51.

PARSONS
BEHLE &
LATIMER

4

Hansen alleges he dressed out daily in a hard hat, reflective clothing, ear protection, steel-toed boots, safety glasses, and gloves for his job as equipment operator. *Id.* ¶ 57. Hansen claims he donned and doffed this gear "off the clock". *Id.* ¶¶ 57, 63. Plaintiffs do not allege what PPE Christensen dressed out in on a daily basis. *See generally*, *id.*.

Plaintiffs allege that Robinson paid them and other hourly employees "non-discretionary bonuses, such as safety bonuses, productivity bonuses, referral bonuses, and gainshare bonuses and that "Robinson fails to include these nondiscretionary bonuses in Plaintiffs' and the other Hourly Employees' regular rates of pay for overtime purposes." *Id.* ¶¶ 85–86. Plaintiffs do not allege that they received a safety bonus or productivity bonus (which do not in fact exist).

Plaintiffs on behalf of themselves and the putative classes of hourly employees bring causes of action for failure to pay overtime wages under the FLSA (Count I); failure to pay for all hours worked (Count II), failure to pay minimum wages (Count III), failure to pay overtime wages (Count IV), failure to pay all wages upon termination (Count V), and unlawful wage deductions for special uniforms, accessories and cleaning (Count VI). Counts II, III, IV, V, and VI are all pled under Nevada state law, while Count I is pled under the federal Fair Labor Standards Act ("FLSA").

## III.    LEGAL STANDARD

"Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted." *Clark v. Bank of Am., N.A.*, No. 216CV02228GMNVCF, 2017 WL 3814665, at *1 (D. Nev. Aug. 30, 2017) (citing Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient." *Id.* (citing *Twombly*, 550 U.S. at 555). "Accordingly, Rule 12(b)(6) requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This standard asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

## IV.    ARGUMENT

### A.    Plaintiffs Fail to State a Claim for Unpaid Overtime Under the FLSA.

In Count I of the Complaint, Plaintiffs allege that Robinson failed to pay them "overtime wages . . . for all hours worked in excess of 40 a workweek." Am. Compl., ¶ 140. It appears that Plaintiffs' FLSA claim incorporates their allegations with respect to (1) "off the clock" work (donning and doffing PPE); and (2) allegations that non-discretionary bonuses were not included in the regular rate of pay. *See id.*, ¶ 83.

As discussed below, Plaintiffs' claims with respect to donning and doffing and bonuses are inadequately pled and fail as a matter of law.

#### 1.    *The time spent donning and doffing non-unique protective gear is de minimis and not compensable under the FLSA.*

As to the Plaintiffs' claim that they are entitled to overtime pay for the time spent donning and doffing basic non-unique protective equipment, those claims fail. Plaintiffs allege that Robinson required Hansen to don and doff a "hard hat, reflective clothing [vest], ear protection [ear plugs], steel toed boots, safety glasses, [and] gloves" "off the clock." Am. Compl., ¶ 57. In addition to the PPE alleged to have been donned and doffed by Hansen, Plaintiffs allege that other hourly employees donned and doffed respirators. *Id.,* ¶ 75. Plaintiffs do not include any allegations with respect to the PPE Christensen donned and doffed.

The question is whether donning and doffing this basic PPE is compensable. It is not. The Ninth Circuit requires a "three-stage inquiry" to determine if certain activities are compensable under the FLSA: first whether the activity constitutes "work"; second whether the activity was an "integral and indispensable" job duty; and third whether the activity was *de minimis*. *Bamonte v. City of Mesa*, 598 F.3d 1217, 1224 (9th Cir. 2010). The Ninth Circuit recognizes that the donning and doffing of "non-unique protective gear such as hardhats and safety goggles" is not compensable under the FLSA because the time spent completing those activities is *de minimis* as a matter of law. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 904 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005). Defendant pointed this out in its first motion to dismiss, but Plaintiffs made no attempt to cure this deficiency.

PARSONS
BEHLE &
LATIMER

Plaintiffs' claims with respect to hard hats and safety goggles should therefore be dismissed *with prejudice.*

Further, like hardhats and safety goggles, this Court can take judicial notice that steel-toed boots, "reflective clothing" (i.e., vests), ear protection, and gloves are required in virtually all construction, mining, and similar industries when hazards like falling objects or foot piercing exist or where heavy equipment or other similar vehicles are in use. *See* Defendant's Request for Judicial Notice Re: Motion to Dismiss Plaintiffs' Amended Class and Collective Action Complaint ("Request for Judicial Notice"), filed concurrently.

These items are thus not unique to a specific job or position, as evidenced by Plaintiffs' allegations that despite the putative class members having differing job titles and job duties (Am. Compl., ¶ 42), each employee is required to wear hardhats, ear protection, goggles, steel-toed boots, reflective clothing, and gloves. *Id.* ¶¶ 57, 75. No case in the Ninth Circuit or elsewhere has held that the time spent donning and doffing steel-toed boots, safety vests, earplugs, or gloves is compensable time. In fact, the majority of cases view the time spent donning and doffing of these items as akin to the time spent donning other non-unique gear such as hard hats and goggles.[3]

---

[3]     *See, e.g., Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007) (affirming dismissal of plaintiffs' complaints and denial of leave to amend because the time spent donning and doffing "such generic protective gear" such as a helmet, safety glasses, and steel-toed boots was not compensable as a matter of law); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126, n.1 (10th Cir.1994) (holding that donning and doffing safety glasses, a pair of earplugs, a hard hat and safety shoes, "although essential to the job, and required by the employer," are pre- and postliminary activities and thus non-compensable and further explaining "[i]t could also be said that the time spent putting on and taking off these items is *de minimis* as a matter of law, although it is more properly considered not work at all. Requiring employees to show up at their workstations with such standard equipment is no different from having a baseball player show up in uniform, a businessperson with a suit and tie, or a judge with a robe. It is simply a prerequisite for the job, and is purely preliminary in nature."); *Stuntz v. Lion Elastomers, L.L.C.*, 826 F. App'x 391, 400 (5th Cir. 2020) (holding that time spent donning and doffing steel-toed boots, fire-retardant clothing, gloves, hard hats, and safety glasses was not compensable as *de minimis* and/or a non-compensable preliminary task); *Levias v. Pac. Mar. Ass'n*, 760 F. Supp. 2d 1036, 1057 (W.D. Wash. 2011) (holding that time spent donning and doffing non-unique gear such as safety vests, hard hats, and hard-toed boots was not compensable because it was not integral or indispensable work and because it was *de minimis*); *White v. Tip Top Poultry, Inc.*, No. 4:07-CV-101-HLM, 2008 WL 11470959, at *16 (N.D. Ga. Sept. 16, 2008), *report and recommendation adopted*, No. 4:07-CV-0101-HLM, 2008 WL 11470958 (N.D. Ga. Oct. 7, 2008) (holding that time spent donning and doffing a smock, hairnet, and earplugs was not compensable as *de minimis*).

PARSONS
BEHLE &
LATIMER

7

Similarly, courts addressing the issue have found that the time spent donning and doffing a respirator is *de minimis* and not compensable. *See, e.g., Jones v. C & D Techs., Inc.*, No. 1:11-CV-01431-JMS, 2012 WL 4755395, at *10 (S.D. Ind. Oct. 3, 2012). Further, use of a respirator or dust mask is only necessary when an employee is assigned to a specific job or task that requires it. *See* 30 C.F.R. § 60.14 ("The metal and nonmetal mine operator shall use respiratory protection as a temporary measure … when … (2) It is necessary by the nature of work involved (for example, occasional entry into hazardous atmospheres to perform maintenance or investigation).") Because respirators circulate clean air and protect the wearer from hazardous dust or gases, employees who use respirators must go through a medical exam and be fitted for a respirator before being assigned to tasks requiring it. 29 C.F.R. § 1910.134(e)–(e)(1) ("Using a respirator may place a physiological burden on employees that varies with the type of respirator worn, the job and workplace conditions in which the respirator is used, and the medical status of the employee… The employer shall provide a medical evaluation to determine the employee's ability to use a respirator, before the employee is fit tested or required to use the respirator in the workplace."). It is common sense that employees do not don respirators prior to attending safety meetings at the beginning of their shift or before traveling to their work site for the day or wear them any longer than necessary to complete the task at hand. Therefore, there can be no question employees are already on the clock and are therefore compensated for their time to don respirators even if they are not considered *de minimis*.

Like each case described above, the time it takes Plaintiffs and others to don and doff items like boots, reflective vests, ear plugs, masks or respirators, and gloves is negligible and constitutes a non-compensable preliminary task. Plaintiffs' FLSA claims, to the extent they rely on allegations about donning and doffing "off the clock" should therefore be dismissed with prejudice.

### 2. *Plaintiffs fail to allege they received a non-discretionary bonus which was not included in the regular rate of pay.*

Plaintiffs have not alleged that they received any non-discretionary bonus which was not included in the regular rate of pay for purposes of calculating overtime[4].

---

[4]    Under the FLSA, employers must pay overtime of not less than time and one-half the regular rate of pay for all hours worked over 40 hours in a workweek. In calculating an employee's "regular

PARSONS
BEHLE &
LATIMER

8

In the Amended Complaint, Plaintiffs allege in a conclusory manner that Robinson paid non-discretionary bonuses including "safety bonuses, productivity bonuses, referral bonuses, and gainshare bonuses" and "Robinson fails to include these nondiscretionary bonuses in Plaintiffs' and the other Hourly Employees' regular rates of pay for overtime purposes." Am. Compl., ¶¶ 85–86. But vague allegations are not sufficient to put Robinson on notice of the specific claims against it. As Robinson pointed out in its original motion to dismiss, Robinson does not pay any safety bonus or productivity bonus (other than gainshare). They simply do not exist. Plaintiffs failed to allege in their original complaint and in their amended complaint that they received any safety bonus or productivity bonus (other than gainshare), including when they received such a bonus or the amount thereof. These claims should therefore be dismissed. *Flores v. Marriott Resorts Hosp. Corp.,* No. CV188012JVSJPRX, 2019 WL 6792799, at *3 (C.D. Cal. Sept. 23, 2019).

Likewise, as Robinson pointed out in its original motion to dismiss, neither Hansen nor Christensen ever received a referral bonus. In their amended complaint, Plaintiffs do not allege any facts or details to show that Hansen or Christensen received a referral bonus because they did not. These claims should also be dismissed. *Id.*

Additionally, although Plaintiffs include a conclusory allegation that Christensen received a gainshare bonus that was not included in the regular rate of pay, Plaintiffs do not attempt to explain what this bonus is or provide any allegations to show how or why the gainshare bonus was non-discretionary. This court need not "accept as true a legal conclusion couched as a factual allegation." *Flores*, 2019 WL 6792799, at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)); *see also Beyer v. Michels Corp.*, No. 21-CV-514-PP, 2022 WL 901524, at *7 (E.D. Wis. Mar. 28, 2022) (dismissing a plaintiff's FLSA bonus claims for failure to allege any facts to support that certain bonuses were non-discretionary and recognizing that the plaintiff has knowledge about the nature of the bonuses she received, including what she was told or promised with respect to the

---

rate of pay," the FLSA excludes "discretionary" bonuses but requires employers to include "non-discretionary" bonuses. A "nondiscretionary bonus" is generally a bonus that is promised in advance, subject to a specific calculation." 29 C.F.R. § 778.211(b). "The label assigned to a bonus does not conclusively determine whether a bonus is discretionary under [29 U.S.C. §207(7)(e)(3))]." *Id.* at § 778.211(d).

bonuses and failed to include any of these details). In any event, Robinson includes the gainshare bonus amount (here, $2,288.00)[5] and reimbursement for overtime (here, $81.37) in the same line; gainshare bonuses are in fact included in employees' regular rate of pay for overtime.

Plaintiffs also argue in conclusory fashion that an "unlabeled payment of $170.48" should have been but was not included in Christensen's regular rate of pay, even though Plaintiffs appear to have no knowledge of what that payment was meant to compensate for.[6] Am. Compl, ¶ 87. Plaintiffs are not entitled to guess about facts and hope evidence gathered in discovery supports their conclusions. Simple math (and a fully legible copy of the referenced pay stub, included below) confirms the $170.48 was not remuneration for work and was not included in Christensen's gross pay. *See* Request for Judicial Notice, Exhibit 1.

Finally, Plaintiffs do not allege that Hansen received any specific non-discretionary bonus, including when, the amount, or the type of bonus. For these reasons, Plaintiffs' bonus claims should be dismissed.

| Robinson Nevada Mining Company | | | Employee : 52659   CHRISTENSEN, ROBERT W. | | | | MAIL ADVICE | |
|---|---|---|---|---|---|---|---|---|
| Pay Period   03/31/2025   to   04/13/2025 | | | | | Check Date: 04/18/2025 | Check No: | 84456 | |
| Earnings | Hours | Rate | Current | YTD | Deductions | | Current | YTD |
| Regular-Sal | 87.26 | 36.90 | 3,219.92 | 20,690.26 | Gross Wages | | 6,513.98 | 35,402.83 |
| Offsite | | | | 389.30 | Federal Income Tax | | 1,007.96 | 4,529.14 |
| OT PrimeRate | 9.88 | 18.45 | 182.29 | 1,284.67 | Federal FICA Withheld | | 405.10 | 2,172.13 |
| RM PPL | | | | 1,751.64 | Federal Medicare Withheld | | 94.74 | 508.00 |
| Bereavement | | | | 1,328.40 | HSA-EE- | | 89.59 | 716.72 |
| Gainshare | | | 2,369.37 | 5,085.58 | Health - E+1 | | 22.90 | 180.00 |
| Boot Allow | | | | 200.00 | Uniform Ded | | 12.00 | 96.00 |
| Tool Allow | | | 742.40 | 742.40 | life | | 6.60 | 52.80 |
| Holiday Pay | | | | 1,180.80 | Vol EE Life | | 46.95 | 375.60 |
| Holiday 1.5 | | | | 2,749.78 | 401K % | | 346.29 | 2,067.61 |
| Excess Life | | | 132.08 | 528.32 | 401K CU% | | 230.86 | 1,378.42 |
| HSA - EMP+ | | | | 750.00 | 401(K) LOAN   - 3822 | | 297.38 | 2,379.04 |
| 401K CoMtch | | | 173.15 | 1,033.83 | | | 0.00 | |
| Safe Harbor | | | 173.15 | 1,033.82 | | | 0.00 | |
| | | | 170.48 | 1,363.84 | | | 0.00 | |
| * Sick Taken/Available * | 47.47 | | 17.18 | | | | 0.00 | |
| * Vacation Taken/Available * | | | 143.32 | | | | 0.00 | |

Total hrs: 97.14 * Gross Pay $6,513.98 * Total Deductions $2,559.97 * Net Pay $3,954.01

**B.     The Two-Year Statute of Limitations Applies, Barring Any Claims That Accrued Prior to July 2023.**

Even if Plaintiffs' FLSA claims survive dismissal, Plaintiffs do not and cannot adequately allege that Robinson's actions were willful. Therefore, the two-year statute of limitations applies,

---

[5]     Employees receive notice of the amount of the gainshare bonus every quarter.

[6]     The line items for Excess Life, HSA-EMP+, 401K, Safe Harbor, and the blank line item of $170.48 are all benefit costs borne by Robinson; they do not constitute payments to Christensen. The $170.48 constitutes the amount RNMC paid towards Christensen's biweekly vacation accrual. None of these line items are included in Christensen's gross pay.

PARSONS
BEHLE &
LATIMER

barring any portion of the claims that accrued prior to July 2023.

The statute of limitations for FLSA claims and claims under NRS §§ 608.016, 608.018, and 608.020-050 is two years. *See* 29 U.S.C. § 255(a); *Allen v. Vocatus, LLC*, 645 F. Supp. 3d 1037, 1047–48 (D. Nev. 2022) (confirming the two-year statute of limitations for unpaid overtime claims applies to NRS 608.016 and 608.018); *D'Amore v. Caesars Enter. Services, LLC*, No. 2:18-cv-1990 JCM (VCF), 2019 WL 8128166, *6 (D. Nev. Dec. 16, 2019) (applying the two-year statute of limitations to claims for violation of NRS 608.016, 608.018, 608.030, and 608.140).

### 1.     *Plaintiffs Did Not Adequately Allege Willfulness, and the Two-Year Statute of Limitations Thus Applies to Their FLSA Claims.*

The FLSA statute of limitations is **only** extended to three years if alleged FLSA violations arise out of "willful" conduct on the part of defendants. 25 U.S.C. § 255(a). A violation of the FLSA is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *D'Amore v. Caesars Enter. Servs., LLC*, No. 218CV1990JCMVCF, 2019 WL 8128166, at *4 (D. Nev. Dec. 16, 2019). Further, "claims of malice, intent, knowledge, and other conditions of a person's mind must 'allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.'" *Russo v. Duracell, Inc.*, No. 2:21-CV-1403-GMN-DJA, 2022 WL 960591, at *4 (D. Nev. Mar. 29, 2022) (quoting *ESCO Corp. v. Cashman Equip. Co.*, 158 F. Supp. 3d 1051, 1058 (D. Nev. 2016)).

Plaintiffs provide no allegations to support that Robinson knew or should have known that its alleged "off the clock" and bonus policies violated the FLSA. Plaintiffs essentially allege that the purported policies violated the FLSA and that Robinson necessarily must have known this. These allegations fall short of Plaintiffs' duty to allege "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *D'Amore*, 2019 WL 8128166, at *4.

At most, Plaintiffs allege the barebones elements of willfulness (*i.e.*, that Robinson knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA). But Plaintiffs' failure to support these bare allegations with any facts necessitates the application

PARSONS
BEHLE &
LATIMER

11

of the two-year statute of limitations. *D'Amore*, 2019 WL 8128166, at *4 (quoting *Twombly*, 550 U.S. at 555, 557); *Bobiles v. Las Vegas Rev. J., Inc.*, No. 219CV00287JADEJY, 2020 WL 1044007, at *2 (D. Nev. Mar. 4, 2020) (dismissing an FLSA misclassification cause of action on the ground that the two-year rather than the three-year statute of limitations applied because plaintiff's allegations of willfulness, namely that "defendants were sophisticated business owners and had lawyers that drafted their Agreements to intentionally, illegally, improperly, and willfully misclassify her to save a substantial amount of money paying her such a meager wage in violation of the FLSA" were "entirely conclusory and unsupported by factual allegations from which [the court] could deduce willful conduct by the [defendant]."); *Navaja v. Honolulu Acad. of Arts*, No. CV 15-00344 LEK-RLP, 2016 WL 843250, at *5 (D. Haw. Feb. 29, 2016) (holding that the two-year statute of limitations applied because "Plaintiff's Complaint does not include any allegations that would support a finding that his FLSA claims arose out of a willful violation."); *Thompson v. N. Am. Terrazzo, Inc.*, No. C13-1007RAJ, 2014 WL 2048188, at *6 (W.D. Wash. May 19, 2014) (granting motion to dismiss plaintiff's FLSA claims as time-barred and that the two-year statute of limitations applied in case where plaintiff alleged that defendant "intentionally and purposefully denied overtime pay" and "intentionally, purposefully, subjectively, and arbitrarily reduced the plaintiff's hourly salary and their job description" because the allegations 'do not allege the factual basis for [defendant's] knowledge or reckless disregard that its conduct was prohibited by the FLSA.").

Like *Bobiles* and the other cited cases, Plaintiffs' allegations that the alleged policies violated the FLSA and that Robinson must have known this are entirely conclusory. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiffs point to nothing in the Amended Complaint to provide a factual basis for the allegation that Robinson intentionally or willfully deprived them and/or the putative class members of any wages. Accordingly, Plaintiffs' claims of willfulness should be dismissed, and this Court should enter an order confirming that the FLSA's two-year statute of limitations applies to Plaintiffs' FLSA overtime claim (Count I).

/ / /

/ / /

### 2.   A Two-Year Statute of Limitations Also Applies to Plaintiffs' State Law Claims.

Plaintiffs' Nevada state law claims (Counts II, III, IV, V, and VI) are also subject to a two-year statute of limitations. In the Amended Complaint, Plaintiffs purport to represent a putative class of Nevada Hourly Employees, which includes "All hourly Robinson employees during the past 4 years in Nevada." Am. Compl., ¶ 29. Plaintiffs' Nevada state law claims should be dismissed to the extent they seek to recover for alleged violations dating back four years, rather than the standard two-year statute of limitations under Nevada law.

Nevada law expressly provides that causes of action brough under NRS 608.260 (minimum wage) are subject to a two-year statute of limitations. *See* NRS 608.260(1) ("If any employer pays any employee a lesser amount than the minimum wage set forth in NRS 608.250 or, if applicable, the minimum wage established by regulation of the Director of the Department of Health and Human Services pursuant to NRS 608.670, the employee may, at any time within 2 years, bring a civil action against the employer). The Supreme Court of Nevada recently affirmed the application of the two-year statute of limitations to claims under additional Nevada wage and hour laws, including NRS 608.016 (payment for each hour worked), 608.018 (payment for overtime), and 608.020-.050 (payment to employee upon discharge). *Martel v. HG Staffing*, LLC, 138 Nev. 602, 605, 519 P.3d 25, 30 (2022).[7]

---

[7]   The United States District Court for the District of Nevada recently held that "For wage claims brought before May 27, 2021, the statute of limitations is two years. For claims brought after May 27, 2021, the statute of limitations is four years under NRS 11.220, which provides that the statute of limitations for claims that do not have an express statute of limitations to [sic] four years." *Fernandez-Morales v. Currier*, No. 3:23-CV-00115-ART-CSD, 2024 WL 4346550, at *2 (D. Nev. Sept. 29, 2024), *appeal dismissed sub nom. Morales v. Currier*, No. 24-6044, 2025 WL 985933 (9th Cir. Feb. 6, 2025). The Court relied on *Martel* and NRS 11.220 in making this holding. To be clear, *Martel* **did not** hold that a four-year statute of limitations applies to claims after May 27, 2021.  Indeed, the *Martel* Court explained "The Martel employees commenced this lawsuit in 2016, so we need not decide which limitations period applies to claims under NRS Chapter 608 that were commenced after the 2021 amendatory provisions of NRS 11.220 became effective." *Martel*, 519 P.3d at 30, n. 3. NRS § 11.220, which provides that "[a]n action for relief, not hereinbefore provided for, must be commenced within 4 years after the cause of action shall have accrued, regardless of whether the underlying cause of action is analogous to that of any other cause of action with a statute of limitations expressly prescribed by law" does not indicate or suggest that it is meant to supersede prior case law expressly creating statutes of limitation, even if the statute of limitations

Further, even assuming a "willfulness" or similar exception to the two-year statute of limitations applied to the state law claims (it does not), as explained above, Plaintiffs have not alleged any facts to support a claim that Robinson acted willfully, knowingly, or intentionally in enacting the alleged relevant policies. This Court should therefore enter an order confirming that a two-year statute of limitations applies to Plaintiffs' Nevada state law claims (Counts II, III, IV, V, and VI).

### C.     Robinson Paid Plaintiffs for All Hours Worked.

Counts II, III, IV, and V of the Complaint seek to recover for "unpaid wages," both in the form of unpaid minimum wages and underpaid overtime for failure to include bonuses and time spent donning and doffing PPE. These claims fail.

#### 1.     *Plaintiffs admit Robinson paid them at least minimum wage.*

Plaintiffs admit that they were paid more than minimum wage and, thus, their claims on this basis should be dismissed. In Count III of the Amended Complaint, Plaintiffs allege a claim of failure to pay minimum wages pursuant to Nevada law. Plaintiffs provide very little support for this claim. They allege that they and the class members "are entitled to recover their regular hourly rate of pay or the minimum wage, whichever is higher, for all unpaid hours worked . . ." Am. Compl, ¶ 169. Plaintiffs include no allegations to show that they did not receive minimum wage.

/ / /

/ / /

/ / /

was created under the analogous limitations theory. In its decision on Defendant's Motion to Dismiss in *Wieben v. Nevada Gold Mines LLC*, the court includes a footnote indicating that the Defendant acknowledged in briefing that a four-year statute of limitations applies to claims under NRS §§ 608.016 and 608.018. No. 3:24-CV-00575-MMD-CSC, 2025 WL 1785885, at *9, n. 21 (D. Nev. June 27, 2025). But the Court offers no authority for that proposition, and Defendant's apparent acknowledgement of a four-year statute of limitations in that case does not appear to align with Nevada law, as explained above. Given that *Martel* is the only case on point providing the relevant statutes of limitation under Nevada law, and given that the effect of NRS § 11.220 on cases like *Martel* remains an open question in Nevada, this Court should follow *Martel* and hold that a two-year statute of limitations applies to Plaintiffs' Nevada state law claims.

PARSONS
BEHLE &
LATIMER

14

Pursuant to NRS § 608.250, "Each employer shall pay to each employee of the employer a wage of not less than:

(e) Beginning July 1, 2023:
(1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $10.25 per hour worked.
(2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $11.25 per hour worked.
(f) Beginning July 1, 2024:
(1) If the employer offers health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $11.00 per hour worked.
(2) If the employer does not offer health benefits to the employee in the manner described in Section 16 of Article 15 of the Nevada Constitution, $12.00 per hour worked.

In other words, during the relevant time period, Robinson was required to pay Plaintiffs and the putative class members between $10.25 and $12 per hour. This Court has previously found that "If the total wage paid to an employee in any given workweek, divided by the total hours worked that week, equals or exceeds the applicable minimum wage, there is no FLSA violation." *D'Amore v. Caesars Enter. Servs., LLC,* No. 218CV1990JCMVCF, 2019 WL 8128166, at *3 (D. Nev. Dec. 16, 2019).[8] The same logic applies to this claim brought under state law. Based on Plaintiffs' own admissions in the Complaint, they were paid far more than minimum wage.

Hansen alleges in the complaint that he worked four to five days a week for twelve hours a day at an hourly rate of $33. Am. Compl. ¶¶ 49, 51. Hansen also claims "the other Hourly Employees generally work approximately 4 to 5 days a week for approximately 12 hours a day "on the clock" (48-60 hours a workweek)." *Id.* ¶ 53. Hansen does not provide any information about the Hourly Employees' rate of pay, making it impossible to determine whether those employees earned minimum wage. *See generally*, *id.*

Hansen earned far more than the minimum wage for all hours worked even including the alleged "off the clock" time of up to 45 minutes per day. Am. Compl. ¶¶ 58, 64 (alleging that donning gear in the morning took 20 to 30 minutes and doffing at the end of the day took 10 to 15

---

[8]    "The Nevada Supreme Court has previously looked to the FLSA when deciding state law wage claims." *Sargent v. HG Staffing*, LLC, No. 313CV00453LRHGWF, 2019 WL 1117905, at *4 (D. Nev. Mar. 8, 2019).

minutes).[9] At the low end of his alleged hours worked (48 per week, four days per week at 12 hours each), Hansen earned at least $1,716.00 per week (($33 regular rate of pay x 40 regular hours) + (($33x1.5 overtime rate) x 8 hours overtime))[10], equating to an hourly wage of $35.78 ($1716/48). Even accounting for three allegedly unpaid hours (45 minutes per day for alleged "off the clock" time), Hansen still earned approximately $33.65 per hour ($1716/51 hours).[11]

And at the high end of the alleged hours worked (60 per week), Hansen again earned far more than the minimum wage under Nevada law. Indeed, in weeks he worked five days a week and 60 hours, Hansen earned $2,310.00 per week, according to the Amended Complaint ($33 regular rate of pay x 40 regular hours) + ((33x1.5 overtime rate) x 20 overtime hours), which equates to an hourly wage of $38.50 ($2310/60 hours). Even accounting for 3.75 alleged unpaid hours, Hansen still earned approximately $36.24 per hour ($2310/63.75 hours), much more than the minimum wage in Nevada. NRS 608.250(1)(e)–(f). Thus, Hansen *admits* he was paid more than minimum wage for all periods and hours worked.

Similarly, Christensen alleges he worked 48 to 60 hours per week at an hourly rate of $36.90, which is more than Hansen's hourly wage. Using the same calculations described above, Christensen earned more than Hansen and much more than minimum wage.

[9]    Hansen's 20-to-30-minute estimate in the original complaint included time spent attending a daily safety meeting. Hansen's counsel acknowledged that safety meetings do not occur off the clock and removed those allegations from the Amended Complaint. However, Plaintiffs did not reduce the estimated "off the clock" time in the Amended Complaint.

[10]    This calculation does not include any additional remuneration that was included in Hansen's overtime rate, including remuneration for gainshare bonuses. Inclusion of those funds would only increase Hansen's hourly rate of pay.

[11]    The Nevada Supreme Court has endorsed calculating minimum wage as an average over a workweek. *A Cab, LLC v. Murray*, 137 Nev. 805, 807, 501 P.3d 961, 967 (2021) ("minimum wage damages are simple to calculate: multiply the hours worked in a pay period by the applicable minimum hourly wage to calculate the minimum amount due, then subtract the actual pay received to determine whether a deficiency exists."). The *Wieben* court determined that the District of Nevada's analysis of Nevada law in *Porteous v. Cap. One Servs. II, LLC*, 809 F. App'x 354, 357 (9th Cir. 2020) was more convincing than the Nevada Supreme Court's own statement in *A Cab*. *Wieben*, 2025 WL 1785885, at *9. Since *Wieben*, the Nevada legislature amended its wage and hour laws to explicitly incorporate various provisions of the FLSA, including the FLSA's minimum wage provisions. *See* NRS § 608.016, 608.018 (expressly incorporating the FLSA). This district recognizes that the FLSA employs the workweek approach. *Douglas v. Xerox Business Servs., LLC*, 875 F.3d 884, 885 (9th Cir. 2017).

PARSONS
BEHLE &
LATIMER

Plaintiffs make no attempt in the Amended Complaint to explain how they were not paid minimum wage. Given that Plaintiffs was paid more than minimum wage for all hours worked, they cannot bring minimum wage claims on behalf of the purported class. *See* Fed. R. Civ. P. 23(a)(1)(3) (requiring that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"); Nev. R. Civ. P. 23(a)(1)(3) (same). Count III should therefore be dismissed with prejudice.

### 2.     *Plaintiffs fail to allege sufficient facts to support their claim for unpaid wages.*

At Count II of the Complaint, Plaintiffs allege a cause of action for failure to pay for all hours worked under NRS § 608.016, including time spent donning and doffing of PPE and failure to pay minimum wages. Am. Compl. ¶ 154.

To the extent Plaintiffs' unpaid wages claims are a repackaging of their minimum wage claims, the claims fail. Nevada's minimum wage statute, NRS § 608.250, requires an employer pay each employee a wage of not less than the statutorily required minimum wage ($10.25 to $12 in 2023 and 2024) per hour worked. NRS § 608.016 allows employees to assert an unpaid wages claim when they do not receive wages for each hour worked. Plaintiffs seem to believe that if an employee is not paid for all hours worked, he can bring an unpaid hours claim in addition to a minimum wage claim, because he received $0 for the unpaid hours (*i.e.*, less than minimum wage). This strained reading of the minimum wage statute would effectively give Plaintiffs two causes of action for the exact same conduct, each potentially with a different statute of limitations.[12] Plaintiffs' claims with respect to minimum wage violations are encompassed under Nevada's minimum wage statute and cannot serve as grounds for relief for unpaid wages under 608.016. Further, as explained above, Robinson paid Plaintiffs significantly more than minimum wage. Plaintiffs are thus not entitled to unpaid wages on this ground.

Further, Plaintiffs cannot recover for their donning and doffing claims under Nevada state law because the time they allegedly spent donning and doffing the safety gear was *de minimis* and

---

[12]     Plaintiffs argue that claims under NRS 608.016 are subject to a four-year statute of limitations.

thus not compensable as explained *infra.* In response to the Nevada Supreme Court's recent answer to a certified question, the Nevada Legislature amended its wage and hour laws to expressly incorporate certain portions of the Portal-to-Portal Act, including the portions related to preliminary and postliminary work. NRS § 608.016 (incorporating 29 U.S.C. § 254(a)(2). Accordingly, for the reasons explained *supra.* at §A(1), the time Hansen allegedly spent donning and doffing his non-unique safety gear was *de minimis.*[13] Accordingly, even if they donned and doffed the equipment off the clock (which is disputed), Plaintiffs are not entitled to recover payment for that non-compensable time under Nevada law.[14]

Finally, Plaintiffs cannot recover for their bonus claims under Nevada law. NRS § 608.018 requires payment of 1.5 times "an employee's regular wage rate" for hours worked over 40 in any scheduled week of work. NRS § 608.012 defines "wages" as: "The amount which an employer agrees to pay an employee for the time the employee has worked, computed in proportion to time… but excludes any bonus or arrangement to share profits." Unlike the FLSA, Nevada law excludes bonuses or profit-sharing arrangements from an employee's wages. *Id.* Accordingly, to the extent Plaintiffs' unpaid wages rely on an alleged failure to include bonuses in Plaintiffs' overtime rates, those claims should be dismissed with prejudice, as Nevada law does not require bonuses to be included in overtime wages. For the reasons above, Count II should be dismissed with prejudice.

### 3. Plaintiffs Fail to Allege Defendants Violated State Law in the Issuance of Plaintiffs' Final Paychecks.

In Count V of their Amended Complaint, which was inexplicably omitted from the original complaint, Plaintiffs allege Robinson failed to pay all wages upon termination. NRS 608.020–050

---

[13]   As explained above, Plaintiffs do not allege that Christensen donned or doffed any specific PPE off the clock.

[14]   The amended version of NRS § 608.016 also provides that "An employer shall not require an employee to work without wages …when an employee is donning or doffing a uniform or personal protective equipment where employees are not permitted to bring or wear uniforms or personal protective equipment from home." Plaintiffs include no allegations that they were not permitted to bring or wear uniforms or personal protective equipment from home.

sets forth the requirements for employers to issuing their (former) employees their final paychecks and requires, among other things, that final paychecks be issued "immediately" to discharged employees or no later than seven days after an employee resigns. NRS § 608.020–.030.

Plaintiffs do not allege their final paychecks were untimely, rather they make vague allegations that "[b]y failing to pay the Nevada Class Members for all hours worked (including earned minimum wages, regular wages, and/or overtime wages) at the required rates based on all remuneration, Robinson has failed to timely pay all wages due and owing to the Nevada Class Members who have separated their employment." Am. Compl., ¶ 189. Such a statement is insufficient to state a claim for untimely payment under Nevada law. *See Martel v. HG Staffing, LLC*, 138 Nev. 602, 609, 519 P.3d 25, 33 (2022) (rejecting Plaintiff's attempt to circumvent the two-year statute of limitations under NRS 608.016 and 608.018 by bringing a claim for untimely payment under NRS 608.040, and further dismissing his claims for untimely payment because he did not allege that he failed to timely receive his final paycheck).

The Complaint contains no allegations regarding the untimeliness of Plaintiffs' receipt of their final paychecks or any specifics regarding the amount of the final paychecks. Further, as explained *supra* at §§ C(1–3), Plaintiffs have failed to allege their entitlement to any additional wages on the grounds of minimum wage or overtime wage rate violations. Accordingly, Plaintiffs' claims with respect to their final paychecks fail and should be dismissed.

**D.    Plaintiffs' State Law Overtime Claims Fail for the Same Reasons the FLSA Claims Fail.**

Count IV of the Complaint seeks to recover for alleged violations of Nevada's overtime statute, NRS § 608.018. Like the FLSA, Nevada requires employers to pay employees 1.5 times their regular wage rate for all hours worked over 40 in any given week. NRS § 608.018(2). Courts interpreting Nevada law rely heavily on cases interpreting the FLSA's requirements when determining whether there has been a violation of the statute. *See, e.g.*, *Xing v. USA Good Travel*

*& Tour Inc.*, No. 2:20-CV-01593-MMD-BNW, 2024 WL 4564294, at *2 (D. Nev. Oct. 23, 2024) (analyzing the FLSA and NRS 608.018 under the same standard); *Sargent v. HG Staffing, LLC*, No. 313CV00453LRHGWF, 2019 WL 1117905, at *9 (D. Nev. Mar. 8, 2019) "[NRS 608.018] recently revised, is intended to track federal law." (citing *Csomos v. Venetian Casino Resort, LLC*, No. 55913,381 P.3d 605, 2012 WL 642460, at *3 (Nev. Feb. 24, 2012)); *Kariuki v. Shac, LLC*, Case No. 2:14-cv-1118 JCM (CWH), 2016 WL6069927, at *5 (D. Nev. Oct. 10, 2016) ("Nevada law "follows the same requirements as the FLSA for overtime compensation claims."). In fact, the Nevada Legislature recently amended NRS 608.018 to provide that the calculation of overtime is subject to a number of "federal regulations which relate to principles for computing overtime pay based on the regular rate, adopted under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq." including 29 C.F.R. § 778.200, which is the regulation from which case law interpreting the principles of discretionary and non-discretionary bonuses was created.

As explained *supra*. at §A, Plaintiffs' overtime claims fail because (1) the time spent donning and doffing PPE was *de minimis*; and (2) Plaintiffs fail to allege when or if they received a non-discretionary bonus that was not included in their regular rate of pay. For the same reasons discussed above, Plaintiffs' Count IV should be dismissed.

Plaintiffs' overtime claims also fail under state law even without the assistance of case law interpreting the FLSA. As discussed above, the definition of "wages" in Nevada specifically excludes bonuses and profit-sharing arrangements. NRS § 608.012. Accordingly, to the extent Plaintiffs' Nevada overtime claims rely on an alleged failure to include bonuses in Plaintiffs' overtime rates, those claims should be dismissed with prejudice, as Nevada law does not require bonuses to be included in overtime wages.

Plaintiffs' overtime claims with respect to donning and doffing also fail under Nevada law, because the alleged time spent donning and doffing was *de minimis*, as described above. Count IV should therefore be dismissed with prejudice.

**E.     Plaintiffs' Unlawful Wage Deduction Claim is Not a Recognized Cause of Action in Nevada and Fails on the Merits.**

At Count VI of the Amended Complaint, Plaintiffs seek to hold Robinson liable for its

PARSONS
BEHLE &
LATIMER

"uniform deduction policy" and claim that Robinson "deducts earned wages from Nevada Class Members each pay period for the use and cleaning of its uniforms" in violation of NRS § 608.165. Am. Compl., ¶¶ 196–97.

NRS § 608.165 provides "All uniforms or accessories distinctive as to style, color or material shall be furnished, without cost, to employees by their employer. If a uniform or accessory requires a special cleaning process, and cannot be easily laundered by an employee, such employee's employer shall clean such uniform or accessory without cost to such employee."

As an initial matter, Nevada law does not provide a private right of action for claims under NRS 608.165. *Mayweather v. CVSM, LLC*, No. 220CV01111CDSVCF, 2023 WL 3852098, at *5 (D. Nev. June 5, 2023) ("because this court cannot identify any private right-of-action for the defendants' alleged labor violations, the defendants are entitled to summary judgment on the plaintiffs' NRS § 608.165 claim.") (cleaned up and internal quotations omitted). Given that no private right of action exists, Plaintiffs cannot bring this claim, and it should be dismissed with prejudice.[15]

Even if Plaintiffs could assert a claim under NRS § 608.165, the claim fails on the merits. As explained above, Robinson provides an optional uniform *laundering* service to its employees; Robinson does not charge employees for any of the PPE or "uniforms" it provides them. Several employees, including Hansen, choose to opt out of this laundering service and launder their Robinson-provided uniforms at home. With respect to their allegations, Plaintiffs do not specify what items they consider to be "uniforms of a particular style, color, and material."[16] Am. Compl., ¶ 89 (alleging that "Robinson deducts earned wages from Christensen and other Hourly Employees for uniforms of a particular style, color, and material it issued and the dry cleaning of these uniforms.") Certainly, Robinson does not "dry clean" Plaintiffs' boots, goggles, respirators, or hard

---

[15] In their Amended Complaint, Plaintiffs claim they have a private right of action for "unpaid wages" pursuant to NRS 608.140. Am. Compl., ¶ 193 (citing *Neville v. Eighth Judicial District Court in and for County of Clark, 406 P.3d 499, 504* (Nev. 2017)). *Neville* was decided six years *before Mayweather* and did not address claims under NRS 608.165.

[16] As is obvious from Christensen's paycheck (Am. Compl., ¶ 87), Robinson offers an annual boot allowance. The remaining PPE listed in the Amended Complaint is provided to employees by Robinson free of charge.

PARSONS
BEHLE &
LATIMER

21

hats, and Robinson should not be left to guess as to what gear Plaintiffs claim falls under the purported "uniform deduction policy." *Clark v. Bank of Am., N.A.*, No. 216CV02228GMNVCF, 2017 WL 3814665, at *1 (D. Nev. Aug. 30, 2017) (citing Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) ("A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests...")

Assuming Plaintiffs uniform claims relate to "reflective clothing" (which the court can take judicial notice is the only PPE listed in the complaint potentially capable of laundering), these items are not "distinctive as to style, color or material." This Court can take judicial notice that reflective or high-visibility clothing such as coveralls or vests are required in virtually all construction and mining job sites where hazards exist. *See* Request for Judicial Notice. Plaintiffs do not allege that this reflective clothing is distinctive in some way to Robinson – these items are not like matching uniforms worn by police officers or UPS or FedEx drivers. Plaintiffs also do not allege that these "uniforms" require "a special cleaning process, and cannot be easily laundered by an employee." Employees can choose whether to opt into Robinson's uniform cleaning service. Employees who do not opt in (like Hansen) presumably launder their "uniforms" at home, indicating they do not require some special cleaning process. Based on the foregoing, Plaintiffs fail to demonstrate Robinson's alleged "uniform deduction policy" violates Nevada law. Count VI of Plaintiffs' Amended Complaint should be dismissed with prejudice.

## V.   CONCLUSION

Plaintiffs' Amended Complaint suffers from a number of pleading and factual deficiencies. Plaintiffs failed to state a claim for unpaid overtime under the FLSA and Nevada state law, because the time they allegedly spent donning and doffing PPE was *de minimis* and thus non-compensable and because they fail to allege they received a non-discretionary bonus that was not included in their regular rate of pay. Further, based on their own allegations, Plaintiffs were paid significantly more than minimum wage, and thus have failed to state a claim for failure to pay minimum wage or for unpaid wages under state law. Finally, Plaintiffs have no private right of action for their uniform claims and fail to allege what "uniforms" they contend required a special cleaning process, requiring dismissal for failure to state a claim. For the reasons outlined above, the Complaint should

PARSONS
BEHLE &
LATIMER

22

be dismissed.

DATED this 15th day of January, 2026.

PARSONS BEHLE & LATIMER

*/s/ Sarah Ferguson*
Sarah Ferguson (NSBN 14515)
50 W. Liberty Street, Suite 750
Reno, NV 89501
Telephone: (775) 323-1601
SFerguson@parsonsbehle.com

Christina Jepson
Hannah J. Ector
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone ( 801) 532-1234
CJepson@parsonsbehle.com
HEctor@parsonsbehle.com
ecf@parsonsbehle.com
(*Pro Hac Vice Applications Forthcoming*)

*Attorney for Defendant*

PARSONS
BEHLE &
LATIMER

23

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that I am an employee of Parsons Behle & Latimer, and that on this 15th day of January, 2026, I filed a true and correct copy of the foregoing **DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** with the Clerk of the Court through the CM/ECF system which sent electronic notification to the following:

Esther C. Rodriguez (NSBN 006473)
RODRIGUEZ LAW OFFICES, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145
info@rodriguezlaw.com

Alyssa J. White (TSBN 24073014)
Josephson Dunlap LLP
11 Greenway Plaza, Suite 3050
Houston TX  77046
awhite@mybackwages.com

*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　/s/ *Nancy A. Prout*
　　　　　　　　　　　　　　　　Employee of Parsons Behle & Latimer

PARSONS
BEHLE &
LATIMER

24